## York, Receiver, v. Sun Insurance Company.

[No. 9,103. Filed October 24, 1916. Rehearing denied December 19, 1917.]

1. Insurance.—*Fire Insurance.—Delivery of Policy.—Payment of Premium.*—An unconditional delivery of a policy of insurance by the insurer's agent to the insured amounts to a waiver of the advance payment of the premium, especially where no condition in the policy makes actual payment of the premium a condition precedent to the attaching of liability. p. 274.

2. INSURANCE.—*Fire Insurance.*—*Cancellation of Policy.*—*Return by Mail.*—Although the mere return by mail of a fire insurance policy to the insurer's agent would not of itself amount to cancellation under the policy provisions giving the insured the right to cancel at any time, yet, if the policy was mailed with the obvious purpose of cancellation, receipt by the agent for this purpose would amount to cancellation. p. 275.

3. INSURANCE.—*Fire Insurance.*—*Right of Cancellation.*—*Waiver.*—When an insurer is cognizant of a right which would entitle it to declare a forfeiture of a policy of insurance, and it fails to assert such right, the law will regard the insurer as having waived the right. p. 277.

4. INSURANCE.—*Fire Insurance.*—*Estoppel of Insurer.*—Where knowledge is brought home to the insurer by the insured, which is of such a character as to give the insurer a right, which, if not asserted within a reasonable time would induce the insured to rely thereon, the insurer cannot thereafter assert such right to the detriment of the insured. p. 277.

5. INSURANCE.—*Fire Insurance.*—*Right of Forfeiture.*—*Waiver.*—While a mere silence on the part of the insurer does not ordinarily furnish sufficient grounds of waiver of a right of forfeiture on its part, yet the insurer must, on receiving notice of a right of forfeiture, act with reasonable diligence, if by its failure to do so the insured would be led to believe that his policy remained in force and afforded him indemnity. p. 278.

6. INSURANCE.—*Fire Insurance.*—*Right of Insurer to Cancel.*—*Failure to Notify Insured of Cancellation.*—Where a fire insurance policy, upon which the premium was unpaid, was returned by insured, together with a letter directing attention to a mistake in designating the insured and suggesting conditions which might prevent the rewriting of the insurance, the insured was chargeable, after the lapse of a reasonable length of time, with notice that the insurer acted upon the information conveyed and refused to rewrite the policy; and where the insured and the insurance agent lived in the same city and thirty-three days lapsed between the company's receipt of the policy and loss by fire, a reasonable time had elapsed, and the insured must be deemed to have had notice that the insurer had determined not to rewrite the insurance, so that the insurer was not liable, although its agent failed to notify insured of such refusal. pp. 278, 279.

7. INSURANCE.—*Fire Insurance.*—*Return of Policy.*—*Cancellation.*—*Lapse of Reasonable Time.*—*When Law Question.*—Where insured returned a policy of fire insurance to the company, with a request that it be rewritten, under such circumstances that after a lapse of a reasonable length of time he was chargeable

with notice of the company's refusal to rewrite the insurance, though no actual notice of such refusal was given, the question of what was a reasonable length of time was one of law, where the facts were undisputed and different inferences could not reasonably be drawn therefrom. p. 279.

From Marion Superior Court (91,732); *Clarence E. Weir,* Judge.

Action by Phineas H. York, receiver of the Mahogany Interior Trim Company, a corporation, against the Sun Insurance Company. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Frank G. West,* for appellant.

*James W. Noel,* for appellee.

MORAN, J.—Appellant in the court below unsuccessfully sought to recover on a fire insurance policy for damages by fire to certain personal property, which he alleged was insured by appellee company against loss in this manner. The errors assigned are: (1) Overruling appellant's demurrer to appellee's third paragraph of answer; (2) error in stating the conclusions of law on the facts found; and (3) in overruling appellant's motion for a new trial.

The questions presented by the first and third assignments of error are included and covered by the second assignment, and as a matter of convenience will be considered under this assignment.

The facts found by the court, so far as material, are to this effect: On August 12, 1911, P. H. York was appointed receiver of the property and assets of the Mahogany Interior Trim Company, an Indiana corporation, engaged in the manufacture of interior furnishings, with a branch plant engaged in manufacturing metallic cabinets, under the name of Metallic Cabinet Company. On March 20, 1912, on sta-

tionery bearing the printed letter-head of "Metallic Cabinet Co., Indianapolis," the receiver solicited a policy of insurance in the sum of $1,500 of J. G. McCullough, an insurance agent, on the property under his control as receiver. After examining the property the insurance agent wrote a policy of insurance in the appellee company in the sum of $1,500, without making any inquiry as to the ownership or possession of the property covered by the policy. When written the policy was mailed to the receiver, together with a statement of the amount of the premium. On May 3, 1912, P. H. York wrote J. G. McCullough a letter, which, omitting the formal parts, reads:

"Relative to the insurance of Metallic Cabinet Co., I would say I note that you have made it out to Metallic Cabinet Co. whereas it should have been made out to P. H. York receiver, also in order that there may be no misunderstanding with the policy would say that another insurance company cancelled the insurance because of the building not being in such condition that they would care to continue it. I herewith return your policy. Do not make it out unless you are sure that this cancellation will not waive insurance. Also note that we have discontinued work at the plant which may further complicate with the insurance."

On receiving the letter and policy, McCullough, who had authority to issue policies of insurance and collect the premium therefor in appellee company, indorsed on the policy, "Cancelled for non-payment," and forwarded the same to the office of appellee company at Chicago. No notice of the action taken by the agent was communicated to the receiver or to the Mahogany Interior Trim Company,

or to the Metallic Cabinet Company. From March 20 to May 3, 1912, the business of manufacturing metallic cabinets and interior furnishings was conducted in the name of ''The Metallic Cabinet Co.'' Stationery and advertising matter contained no reference to the receiver or Mahogany Interior Trim Company. McCullough, the agent of appellee company, knew before the mailing of the policy to the receiver that the property insured was in the custody of a receiver. On June 6, 1912, the property was damaged by fire, and on the following day the Metallic Cabinet Company, by P. H. York, mailed a letter, which was received by the agent of appellee company in due course of business, informing him of the loss. This was all the notice given to appellee company, and within ten days thereafter an attorney acting for appellant called upon McCullough in reference to the loss, whereupon McCullough informed the attorney that there was no insurance on the property damaged by fire, and that the policy had been cancelled.

The policy of insurance, which is a standard form of fire insurance policy, is made a part of the special findings of fact, and among its provisions is the following:

''This policy shall be cancelled at any time at the request of the insured, or by the company by giving five days' notice of such cancellation. If the policy shall be cancelled as hereinbefore provided or become void or cease, the premium having been actually paid, the unearned premium shall be returned on surrender of this policy or by its renewal, this company·retaining the customary short rate, except, that when this policy

is cancelled by this company by giving notice, it shall retain only the pro rate premium.''

On the foregoing, which substantially covers the facts found, the court, as a matter of law, concluded that the policy sued on was not at the time of the loss in force and that appellant was not entitled to recover.

Appellee attaches some force to the fact that the premium for the issuing of the policy was not paid. This argument naturally directs itself to the legal existence of the policy from its inception.

It seems to be well settled that ''an unconditional delivery of a policy by the agent of the insurer to the insured amounts to a waiver of the payment in advance of the premium.''. So the policy under consideration had a legal existence from the delivery thereof, in so far as the payment of the premium in advance affected such existence. 19 Cyc 606; *Home Ins. Co.* v. *Gilman* (1887), 112 Ind. 7, 13 N. E. 118.

Further, it may be added that there is no condition in the policy itself making the actual payment of the premium a condition precedent to the attaching of liability. 5 Elliott, Contracts §4133. But from the language of the policy, viz., ''The premium having been actually paid, the unearned premium shall be returned on surrender of the policy,'' etc., it might well be inferred that credit could be extended as to the payment of the premium. Hence, in so far as the payment of the premium affects the attachment of the risk, it can be disassociated from this discussion, and receive no further consideration, except in so far as the nonpayment of the premium might throw light on the question of whether the policy was or was not canceled. The actual delivery

of the policy without payment in advance being required, the relation of creditor and debtor existed from that time on as between the insurer and the insured, with a chose in action in the former for the unpaid premium.

Starting with the proposition that liability attached under the policy from its delivery and that appellant was indemnified from the moment

2.   of delivery against loss by fire as to the property described therein, the subsequent return of the policy by mail to appellee's agent would not of itself amount to a cancellation under the provisions of the policy that gave the insured the right to cancel at any time.   However, if the policy was mailed by appellant to the agent of appellee company with the obvious purpose of it being canceled, its receipt by the agent for this purpose would amount to a cancellation.   *Ikeller* v. *Hartford Fire Ins. Co.* (1898), 24 Misc. Rep. 136, 53 N. Y. Supp. 323; *Crown Point Iron Co.* v. *Aetna Ins. Co.* (1891), 127 N. Y. 608, 28 N. E. 653, 14 L. R. A. 147.

Appellant states his position in the following language: "It is appellant's contention that such letter is not an absolute order of cancellation of the insurance contract by the assured; that it simply authorizes the insurer to cancel the contract if the conditions thereon named will prevent the insurance, and that it implies a request that the policy shall be rewritten if the conditions named will not prevent it."

It is apparent from the letter that the policy was not returned to appellee for the obvious purpose of cancellation, but was delivered to appellee's agent conditionally.   For if appellant desired to cancel the policy, he had the right absolutely under the terms of

the policy without assigning any reasons therefor. The language employed in the drafting of the letter is not entirely free from obscurity. The reasonable interpretation of the same is that the policy was returned to appellee's agent to correct the form of the policy, not that the return should affect the risk. However, in connection with the return of the policy, appellee's attention was called to two conditions which arose subsequently to the writing of the policy, and before its return, viz.:   (1) That another insurance company had cancelled the insurance by reason of the condition of the building; (2) that the factory had ceased operations.   This latter was a condition subsequent which worked a breach of the policy, and which was grounds for forfeiting the policy under its terms, providing the factory was not operated for ten days.   And unless these conditions prevented, appellant desired the insurance rewritten in a policy freed from the objection appearing upon the face of the policy.   The two conditions, to which the attention of the agent of appellee company was called, were not to give the insured grounds to cancel the policy, for this right appellee could exercise under the provisions of the policy without assigning any reasons.   The purpose evidently was to make the disclosure of conditions that did not exist at the time the policy was written, and which might affect the validity of the new policy when written.   Upon the return of the policy to the insurer under these conditions, its duty, whatever it was, is material.

Had appellee notified appellant, upon the receipt of the policy accompanied by the letter, that it would not rewrite the insurance, the cancellation would have been complete, not by reason of the provisions of the policy authorizing cancellation by it, but by reason

of the conditions that had arisen in connection with
the risk after the policy had been written and the
language employed in conveying such information
to appellant as set forth in the letter. 19 Cyc 643.

Under the facts, if it became the duty of the
insurer to inform the insured that it would not
thereafter carry the risk, then appellee cannot
3.  escape liability, for when an insurer is cogniz-
ant of a right, which would entitle it to declare
a forfeiture of a policy of insurance, and it fails to
assert such right, the law will regard it as having
waived the same. *Phenix Ins. Co.* v. *Boyer* (1890), 1
Ind. App. 329, 27 N. E. 628; 19 Cyc 796; *Havens* v.
*Home Ins. Co.* (1887), 111 Ind. 90, 12 N. E. 137, 60
Am. Rep. 689. In the latter case it was said: "The
tendency of the modern cases is to hold that, if notice
be duly given to the company or its agent of addi-
tional insurance, or if actual knowledge is brought
home that other insurance exists, or has been
obtained, and no objection is made, the company will
be estopped from insisting on a forfeiture because its
consent was not endorsed on the policy." But it has
also been held that: "The insured is not entitled to
rely upon the insurer's mere failure to reply to his
letter as being a waiver of any condition or as
amounting of itself to do an act otherwise prohibited
by the policy." 19 Cyc 791.

The equitable doctrine requiring a person to speak
when to remain silent would be against good con-
science, is applicable as between the insurer
4.  and the insured. Where knowledge is brought
home to the insurer by the insured which is
of such a character as to give the insurer a right
which, if not asserted within a seasonable time, would
induce the insured to rely thereon, the insurer will

not thereafter be heard to assert such right to the detriment of the insured. *Phenix Ins. Co.* v. *Grove* (1905), 215 Ill. 299, 74 N. E. 141, 25 L. R. A. (N. S.) 1.

The true rule seems to be that while mere silence on the part of the insurer does not ordinarily furnish sufficient grounds of waiver of a right of forfeiture on its part, yet, on the other hand, the insurer must on receiving notice of a right of forfeiture act with reasonable diligence, if by its failure to do so the insured would be led to believe that his policy remained in force and afforded him indemnity. That is, the failure on the part of the insurer to cancel a contract of insurance when notice is brought home to it of a cause of forfeiture is, as a general rule, deemed an election that the contract may remain in force and prevents the insurer from subsequently insisting upon the forfeiture. 2 May, Ins. (4th ed.) §508; Elliott, Ins. §179; *Phenix Ins. Co.* v. *Grove, supra* (note).

Are the principles announced available to appellant? When appellant forwarded the policy to appellee's agent by mail he suggested conditions that might prevent the rewriting of the insurance, and in this respect he became the moving party. Up to this time he had not paid the premium, and by his own act he had parted with the physical possession of the policy, the tangible evidence of his contract of insurance. The letter admonished appellee's agent not to rewrite the insurance unless he was sure that the conditions mentioned would not invalidate the same, if rewritten. Did it become the duty of appellee's agent, in order to escape liability that might arise in the future, as it did, to notify appellant that it had concluded not to

rewrite the insurance, by reason of the information contained in the letter, or would appellant be chargeable with such notice after the lapse of a reasonable length of time? Appellant's letter discloses that he was apprehensive of the fact that the insurer would not rewrite the insurance by reason of the information he conveyed to appellee's agent, and which he evidently deemed a sufficient cause for the insurer refusing to do so. With this information before him, he was chargeable with notice after the lapse of a reasonable length of time that the insurer acted upon the information conveyed to it and refused to rewrite the policy.

Appellant and the agent of appellee company both lived in the same city. Thirty-three days' time elapsed from the receipt of the letter by appellee's agent until the property was injured by fire. The writing of the letter, the receipt of the same, as well as the lapse of time, and all the surrounding circumstances are undisputed. This brings the cause in this respect within the rule of law that "where the facts are undisputed and different inferences cannot be reasonably drawn from the same facts, the question of what is a reasonable time is one of law." 2 Elliott, Contracts §1550; 2 Beach, Ins. §1212; *Pickel* v. *Phenix Ins. Co.* (1889), 119 Ind. 291, 21 N. E. 898; *Wright* v. *Bank, etc.* (1888), 110 N. Y. 237, 18 N. E. 79, 1 L. R. A. 289, 6 Am. St. 356; *Insurance Co., etc.* v. *Brim* (1887), 111 Ind. 281, 12 N. E. 315; 2 May, Ins. (4th ed.) 368. Under the facts and circumstances, appellant must be deemed under the law to have had notice before the property was injured by fire that the insurer had determined not to rewrite the insurance.

A correct conclusion was reached by the trial court. Judgment affirmed.

Note.—Reported in 113 N. E. 1021. Insurance: whether failure of insured to speak or act after notice of breach of policy constituted a waiver thereof, 25 L. R. A. (N. S.) 1, 51 L. R. A. (N. S.) 261; waiver of condition in insurance policy by insurer's knowledge of existing facts, 18 Ann. Cas. 686; acts sufficient to effect cancellation of fire policy, 17 Ann. Cas. 795; what amounts to waiver of condition requiring payment of premium before delivery of policy, 57 Am. Rep. 514. See under (1) 19 Cyc 606; (2) 19 Cyc 643; (3) 19 Cyc 791; (4, 5) 19 Cyc 645.