WEBBER, RESPONDENT, v. MASSACHUSETTS BONDING
& INSURANCE CO., APPELLANT.

(No. 6,235.)

(Submitted January 9, 1928.   Decided January 21, 1928.)

[263 Pac. 101.]

*Accident Insurance—False Answers in Application—When
Insurer Estopped to Urge Defense in Action on Policy—
Variance—When Immaterial.*

Trial—Variance—When Immaterial.
1. Where appellant does not claim that he was misled to his
prejudice in making his defense or surprised by having to meet
issues at the trial which were not pleaded, and especially where
his motion for a directed verdict on the ground of variance ap-
pears contrary to the theory of the defense pleaded in his answer,
the motion was properly denied.

Accident Insurance — False Answers in Application — Knowledge of
Facts of Falsity by Agent Imputed to Insurer.
2. The authority of a soliciting agent of an insurance company
to take applications for insurance carries with it the legal im-
plication that he has authority to fill out an application and to
do all things needful in perfecting it, and where he does so and
is duly informed of the facts by the applicant and fails to state
them in the application, the actual knowledge of the agent will
be held to be the knowledge of his principal.

Same—False Answer in Application Written by Agent After Advised
of True Facts Estops His Principal from Urging Falsity as De-
fense to Action on Policy.
3. Under the rule above (par. 2) *held*, that where an applicant
for a health and accident insurance policy was required in his
application to answer the question, *inter alia*, whether he had ever
had appendicitis and in answer stated to the soliciting agent that
he had been operated on for that ailment but the agent inserted
a negative answer notwithstanding the applicant's remonstrance

1. See 21 Cal. Jur. 262; 21 R. C. L. 611.
2. Knowledge of agent imputed to insurer where application drawn
by agent, see notes in 9 Am. St. Rep. 232; 107 Am. St. Rep. 106.
See, also, 14 Cal. Jur. 459. Who is agent of insurance company so
as to make his knowledge imputable to company, see note in Ann. Cas.
1913A, 849. See, also, 14 R. C. L. 1159.
3. Effect of agent's insertion of false answer in application, see
notes in 9 Am. St. Rep. 229; 107 Am. St. Rep. 108. See, also, 14
R. C. L. 1175. Agent's acceptance of insurance when he knows answers
in application are false, see note in 7 Am. Rep. 128.

352    Webber *v.* Massachusetts Bonding etc. Co.    [Dec. T. '27

[81 Mont. 351.]

that it was false, the company was estopped to rely upon its
falsity to defeat recovery under the policy.

[1]    Appeal and Error, 4 C. J., sec. 3199, p. 1171, n. 50.    Rupture,
34 Cyc., p. 1823, n. 98.
[2]    Accident Insurance, 1 C. J., sec. 66, p. 423, n. 18.
[3]    Accident Insurance, 1 C. J., sec. 66, p. 423, n. 18.

*Appeal from District Court, Silver Bow County; Wm. E.
Carroll, Judge.*

Action by Sydney Webber against the Massachusetts Bond-
ing & Insurance Company. Judgment for plaintiff and defend-
ant appeals. Affirmed.

*Messrs. Walker & Walker* and *Mr. C. S. Wagner,* for Appel-
lant, submitted a brief; *Mr. Thomas J. Walker* argued the
cause orally.

Fatal variance: See *Spellman* v. *Rhode,* 33 Mont. 21, 81
Pac. 395; *Forsell* v. *Pittsburgh etc. Copper Co.,* 38 Mont. 403,
100 Pac. 218; *American etc. Co.* v. *Great Northern Ry. Co.,*
48 Mont. 495, 138 Pac. 1102; *State* v. *Brantingham,* 66 Mont. 1,
212 Pac. 499; 33 C. J. 102; 37 C. J. 613.

False statement in application for policy: See *Williams* v.
*Mutual Life Ins. Co.,* 61 Mont. 66, 201 Pac. 320; *Pelican* v.
*Mutual Life Ins. Co.,* 44 Mont. 277, 119 Pac. 778; *Mandoli*
v. *National Council,* 58 Mont. 671, 194 Pac. 493; *Beckman* v.
*National Council,* 61 Mont. 512, 204 Pac. 487.

*Mr. F. C. Fluent,* for Respondent, submitted a brief and
argued the cause orally.

Variance: See *Milwaukeee Land Co.* v. *Ruesink,* 50 Mont.
489, 148 Pac. 396; *Frederick* v. *Hale,* 42 Mont. 153, 112 Pac.
70; 21 R. C. L., sec. 153; 33 C. J., sec. 821, p. 102.

In this case it was alleged that plaintiff suffered from hernia
and it was proved that he suffered from hernia. It was proved
both by the evidence of the plaintiff and the evidence of the
defendant. If the defendant felt uncertain of the case of

plaintiff its remedy was by a special demurrer to the complaint for uncertainty, indefiniteness and ambiguity, and by failing to take this remedy open to it, it waived any defect in that particular by going to trial. (*Doane* v. *Marquisee*, 63 Mont. 166, 206 Pac. 426; *Keffler* v. *Wilds*, 50 Mont. 387, 146 Pac. 1105.)

False statement in application: Under this provision in the application actual intent to deceive or material affectation of the risk must be shown. This is a question of fact for the jury. The answers to the questions in the application under this provision of the policy were representations and not warranties and come squarely within the definition of representation made by this court in the case of *Pelican* v. *Mutual Life Ins. Co.*, 44 Mont. 277, 119 Pac. 778.

The evidence shows that the agent of appellant wrote down the answers in the application and that he did so over the protest of respondent and assured him that it was all right. This amounted to a waiver. (*Carr* v. *Pacific Mutual Life Ins. Co.*, 100 Mo. App. 602, 75 S. W. 180, 183; *Arneberg* v. *Continental Casualty Co.*, 178 Wis. 428, 29 A. L. R. 93, 190 N. W. 97; *Harrison* v. *Provident Relief Assn.*, 141 Va. 659, 40 A. L. R. 616, 126 S. E. 696.)

MR. JUSTICE STARK delivered the opinion of the court.

This is an appeal by the defendant from a judgment rendered against it in favor of the plaintiff in an action brought by him to recover benefits under an accident and health insurance policy issued by the defendant to plaintiff on January 12, 1926. There was no motion for a new trial.

The insuring clause of the policy reads: "This policy insures against (1) the effects resulting, directly and exclusively of all other causes, from bodily injury sustained during the life of this policy solely through external violent and accidental means (excluding suicide, sane or insane), said bodily injury so sustained being hereinafter referred to as 'such injury'; and (2) disability resulting from illness which is contracted

and begins during the life of this policy, and after it has been maintained in continuous force thirty days from its date, hereinafter referred to as 'such illness.' ''

The plaintiff's application for the policy contained the following questions and answers and the statement attached thereto:

"Have you now or have you ever had any of the following? (Answer each question, and if 'Yes' give full details below.) Appendicitis? No. Rupture? No. Any chronic or recurrent disease or infirmity? No.

"I understand and agree that I have made the foregoing answers as representations to induce the issue of the policy hereby applied for, and to that end I agree that if any one or more of them be false all right to recovery under the said policy shall be forfeited to the company, if such false statement was made with actual intent to deceive, or if it materially affects the acceptance of the risk of the hazard assumed by the company."

The complaint, after reciting the issuance of the policy by the defendant, alleges in paragraph 3: "That on or about the 12th day of May, 1926, and while said policy was in full force and effect, plaintiff became sick and ill with an illness and disease covered by said policy and not excepted therefrom, to wit, hernia,"—and then sets forth the length of time the illness and resulting disability continued; that he gave the defendant notice of such illness and disability, furnished proof thereof on blanks supplied by the defendant, and demanded payment of the indemnity provided for in the policy, which had been refused.

The answer admitted the execution and delivery of the policy to plaintiff and in paragraph III says: "As to the allegations of the third paragraph of said complaint this defendant admits that on the 12th day of May, 1926, plaintiff was affected with hernia, and was then and thereafter ill on account thereof, * * * and in this connection defendant alleges that said illness was caused approximately by the aggravation of said hernia, which existed prior to the issuance of the insurance

policy described in said complaint," and it admits that "plaintiff gave to defendant notice and proof of his alleged illness and disability," and furnished proofs thereof on blanks supplied by the defendant, and had demanded payment of indemnity under the policy, which defendant had refused to pay.

As a further separate defense to the action the answer sets forth the insuring clause of the policy, and also the part of plaintiff's application therefor which is above quoted, and that plaintiff's answers in his application for the policy above set forth were false, and were knowingly made by him as representations to induce the issuance of the policy to him by the defendant, that defendant relied upon these answers and issued the policy in pursuance thereof, and that, if such representations had not been made, the defendant would not have issued the policy.

As originally filed, the answer did not allege falsity in plaintiff's answer to the question regarding appendicitis, but on the trial the same was amended, so as to include such allegation, and it was thereupon stipulated that the plaintiff's reply, theretofore filed, and which contained a general denial of the affirmative defense contained in the answer, should be deemed amended, so as to plead waiver and estoppel as to that question and answer contained in the application.

The testimony disclosed that plaintiff was a miner, and the basis of the claim asserted by him in this action is described in his answer to question 7 of the "surgeon's preliminary report on accident" as follows: "Q. State here fully and precisely, what you were doing at the time and how the accident occurred. A. I was standing in the manway, forty to fifty feet above the sill, pulling a waste raise into the stope, and lost balance; regaining balance, strained myself severely."

The testimony further showed that as a result of the happening above set forth the plaintiff was confined to his home for a time, then went to the Murray Hospital in Butte, where he was operated on for hernia, and was thereafter confined in

his home, unable to perform the duties pertaining to his occupation, for some considerable period. Surgeons who attended the plaintiff made written reports, which were attached to his proofs of claim, in which his condition was designated as resulting from hernia at the lower abdominal muscles, due to severe strains.

In reference to the statement contained in his application for the policy, to the effect that he had never had appendicitis, plaintiff testified that he was operated on for appendicitis at Brainerd, Minnesota, in 1918; that this application was filled in by a Mr. Bishop, agent of the defendant company; that, when the agent asked him if he had ever had appendicitis, he answered that he had been operated on for that ailment, but that the agent wrote in the answer "No" in response to the question; that plaintiff called the agent's attention to this fact, and the agent replied: "That it was over with; I had been operated for it, and he did not see why it would not be all right."

At the close of all the evidence counsel for defendant moved the court to instruct the jury to return a verdict in its favor on the grounds (1) that there was a fatal variance between the allegations of the complaint and the proof offered to sustain it, in that the complaint is predicated upon a disability resulting from illness, to-wit, hernia, whereas the proof disclosed that the basis of plaintiff's claim for indemnity was an accident which resulted in hernia; (2) that the plaintiff's negative answers in the application for the policy, as to whether he had ever had a hernia or had ever had appendicitis, were false and known by him to be false; that the policy was issued upon consideration of such answers, and that the application became a part thereof and contained the above-quoted provision, to the effect that he had made the answers as representations to induce defendant to issue the policy, and that the same should be deemed forfeited if any of the answers were false, and made with actual intent to deceive, or if they materially affected the acceptance of the risk or the hazard

assumed by the company. This motion was denied, and the ruling thereon is assigned as error. We shall take up the points indicated by this motion in the order in which they were made.

By reference to paragraph 3 of the complaint and the defendant's answer thereto above set forth, it will be observed that plaintiff alleged that on May 12 he became sick with an illness covered by said policy, to-wit, hernia, and the answer admits that plaintiff was affected with hernia on the date mentioned, and was then and there ill on account thereof. To avoid liability therefor the answer alleged that such hernia existed prior to the issuance of the policy, and that the illness was approximately caused by an aggravation thereof. This last allegation was denied by plaintiff's reply. Upon the issues thus framed the case proceeded to trial. The plaintiff testified, without objection, that on May 12, 1926, while he was engaged in his occupation as a miner, he lost his balance, "and in that way caught myself on the ladder, and through that strain I was ruptured." A rupture is defined in Dorland's Medical Dictionary as "the forcible tearing or breaking of a part; hernia."

From what has been said above, it appears that, with the acquiescence of both plaintiff and defendant, the case was tried upon the theory that the plaintiff's cause of action arose under the provision of the policy relating to an illness; the plaintiff claiming that the same was contracted during the life of the policy, and the defendant contending that the cause thereof, to-wit, hernia, existed prior to the issuance of the policy.

It is declared by section 9183, Revised Codes of 1921: "No [1] variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits."

In view of the allegations of defendant's answer, and in the light of all the testimony introduced at the trial, it could not be contended that the defendant was actually, or at all, misled

to its prejudice in maintaining its defense to the action on the merits. Indeed, the motion for directed verdict on the ground of variance appears to be contrary to the theory of the defense which it had pleaded in its answer.

The defendant does not claim that it was surprised by having to meet issues at the trial which were not pleaded. Under such authorities as *Milwaukee Land Co.* v. *Ruesink,* 50 Mont. 489, 148 Pac. 396, *Frederick* v. *Hale,* 42 Mont. 153, 112 Pac. 70, and *Wilcox* v. *Newman,* 58 Mont. 54, 190 Pac. 138, we think the motion for a directed verdict on the ground of variance was properly denied.

We now take up the second of the grounds of the motion [2] for a directed verdict, namely, the false statement in the application. In the first place, it is to be observed that the answers to the questions contained in the application were written in by Mr. Bishop, the agent of the defendant, who solicited the plaintiff to take out the policy. The testimony is uncontradicted that the agent, in obtaining information from the plaintiff for the purpose of filling out the application, was fully advised of the fact that plaintiff had been operated on for appendicitis; the plaintiff so told him. Notwithstanding this information, the agent wrote in an answer to the effect that plaintiff had not been afflicted with the ailment. Plaintiff later called the agent's attention to the erroneous answer, and the latter said that it was over with, plaintiff had been operated on for appendicitis, and that he "didn't see why it wouldn't be all right." The agent was thus, in the course of his duty in making out the application, fully advised of the facts about the plaintiff's having had appendicitis.

"The authority of a soliciting agent of an insurance company to take applications for insurance carries with it the legal implication of an authority to fill out the application, and to do all things needful in perfecting it." (2 Joyce on Insurance, 2d ed., 425; *Perry* v. *John Hancock etc. Ins. Co.,* 147 Mich. 645, 111 N. W. 195; *Mutual Fire Ins. Co.* v. *Ward,* 95 Va. 231, 28 S. E. 209.) In *Pfiester* v. *Missouri State Life Ins.*

*Co.,* 85 Kan. 97, 116 Pac. 245, the court said: "It is well settled that, where the agent of an insurance company, who fills out an application for insurance, is duly informed as to facts and fails to state them in the application, the actual knowledge of the agent will be held to be the knowledge of the company." (See, also, *Home Ins. Co. of New York* v. *Strange,* 70 Ind. App. 49, 123 N. E. 127.)

In an extended note to the case of *Johnson* v. *Aetna Ins. Co.,* 123 Ga. 404, 51 S. E. 339, as found reported in 107 Am. St. Rep. 92, it is said: "Perhaps the most frequent application of the rule that knowledge of an agent of the insurer is imputed to his principal arises in those cases in which applications in writing are made out by persons acting as agents for the insurer, to the extent, at least, of soliciting insurance and preparing and forwarding such applications, and in which, though the applicant has truly answered all questions asked him, and given such agent all information desired, he nevertheless, whether by mistake, inadvertence, or design, suppresses information or answers given, and even writes out, and incorporates into the application, answers the very reverse of those made, and the insurer, relying on the application as written, thereafter issues a policy thereon. * * * Generally, * * * whatever knowledge was given to such agent is imputed to his principal, who is deemed to have issued the policy after acquiring such knowledge, and not on the faith of the misrepresentations in the application due to the act or mistake of the agent, and the insurer is therefore held to be estopped from relying thereon to defeat an action by the insured, unless the latter acted in complicity with the agent, or otherwise, for the purpose and with the intent of misleading or defrauding the insurer." This summary of the law is supported by the citation of a great number of cases.

Because the evidence showed that the plaintiff fully advised [3] the agent of the defendant, at the time he made the application for the policy, which was written by the agent, that he had theretofore had appendicitis, and had been

operated on for it, and the fact that the agent's knowledge thereof was imputable to the defendant, it was estopped from relying upon the statement contained in the application as a defense to the action. The motion for a directed verdict on the second ground stated therein was properly denied.

The cases of *Williams* v. *Mutual Life Ins. Co.,* 61 Mont. 66, 201 Pac. 320, *Beckman* v. *National Council,* 61 Mont. 512, 204 Pac. 487, and *Mandoli* v. *National Council,* 58 Mont. 671, 194 Pac. 493, are not in point under the facts presented in this record. In the first of these cases it was held that, because the insured made false statements with knowledge of their falsity, which the defendant accepted as true and acted upon, recovery could not be had upon the policy. In the other two cases the statements made in the application were held to be express warranties, the falsity of which rendered the policies void. In neither of these cases was any question of waiver or estoppel presented. Here those matters were presented by express stipulation of the parties entered on the record during the course of the trial.

The foregoing discussion covers all of the matters presented by the defendant's assignments of error and the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, MATTHEWS and GALEN concur.